

FILED
2009 Jul-22  PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHNNIE L. THOMAS, | ] |
| Plaintiff, | ] |
| vs. | ] 2:08-CV-0260-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.     Introduction.

The plaintiff, Johnnie L. Thomas, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability and Disability Insurance Benefits ("DIB").  Mr. Thomas timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Thomas was fifty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a twelfth grade education, as

well as training to be an auto mechanic. (Tr. at 367.) His past work experiences include employment as a diesel mechanic. *Id*. Mr. Thomas claims that he became disabled on March 1, 2003, due to cervical radiculopathy, degenerative disc disease of the lumbar spine, obesity, hypertension, hyperlipidemia, and obstructive sleep apnea. *Id.* at 19.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr.

Thomas did not meet the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 19.) He further determined that Mr. Thomas engaged in substantial gainful activity when he continued his regular job for regular pay and without accommodations for 9 months since the alleged onset of his disability. *Id*. However, the ALJ continued his assessment after determining that there was no evidence the Plaintiff had engaged in substantial gainful activity beginning January 1, 2004. *Id*. According to the ALJ, Plaintiff's cervical radiculopathy, degenerative disc disease of the lumbar spine, and obesity are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 20. The ALJ did not find Mr. Thomas's allegations to be totally credible, and he determined that he has the following residual functional capacity: medium work. *Id*. at 19-20.

According to the ALJ, Mr. Thomas is unable to perform any of his past relevant work; he is an "advanced age" individual with "at least a high school education" and "acquired work skills" "with a specific vocational

preparation" as those terms are defined by the regulations. *Id*. at 25A. He determined that Plaintiff has work skills "transferable to other occupations with jobs existing in significant numbers in the national economy." *Id*. The ALJ found that Mr. Thomas has the residual functional capacity to perform a "full range of medium work". *Id*. at 26. Even though Plaintiff cannot perform his previous heavy work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, "including: service mechanics, with an estimated 1,246 jobs in north central Alabama; truck mechanics, with an estimated 1,140 jobs in north central Alabama; and service technicians, with an estimated 909 jobs in north central Alabama." *Id*. The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 1, 2003, through the date of this decision." *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the

reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Thomas alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ's residual functional capacity ("RFC") finding of medium contradicted the substantive medical evidence of record. (Doc. 7.) Next, Plaintiff contends that the ALJ did not afford proper consideration to his impairments in the aggregate nor to his impairments' combined effects when making the determination of Plaintiff's RFC. *Id.*

A. Residual Functional Capacity Determination.

Plaintiff contends that the ALJ improperly determined a medium capacity RFC based on the medical evidence of record. *Id.* RFC is the ALJ's assessment in weighing all of the evidence to determine the claimant's remaining ability to execute work with his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The

determination of a medium RFC is defined as work in which an individual is able to: sit, stand, and walk for the entire workday; lift twenty-five pounds frequently; and lift fifty pounds occasionally. 20 C.F.R. § 404.1576. Here, Plaintiff challenges the ALJ's determination of Claimant's ability to work at a medium RFC level based on the medical record. (Doc. 7.) RFC determination is well within the ALJ's authority, but the assessment should be based on all of the evidence. *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546; *Lewis v. Callahan*, 125 F.3d at 1440).

Here, the ALJ considered all relevant evidence and had substantial evidence to determine medium level RFC. The ALJ, in determining claimant's RFC, considered all symptoms to the extent that those symptoms could be reasonably construed with the medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and S.S.R.s 96-4p and 96-7p. (Tr. at 20.)

The objective medical evidence reveals Claimant's history of longstanding back problems, but the evidence does not indicate persistent problems that have lasted a full twelve months. (Tr. at 20-21.) From 1993

until 2003, Claimant sought treatment several times for a lumbar back strain, but he consistently recovered and reported no pain after a week of conservative treatment including: restricted work duties, physical therapy, and analgesics. (Tr. at 21.) (citing Exhibit 3F.) After Claimant's alleged onset date in March 2003, the medical record showed decreased Lumbar flexion, muscle spasms, pain to the right LS spine, and tenderness at the L3 and L4 levels. (Tr. at 21.) Claimant's treatment included: physical therapy, Skelaxin, Celebrex, a Toradol injection; and he was placed on temporary restriction from: lifting, pushing, or pulling over twenty pounds, and bending more than three to four times an hour. *Id.* A week later, March 7, 2003, Claimant's medical record showed improvement with no spasms upon examination. *Id.* On June 13, 2003, Claimant's MRI revealed: degenerative disc disease with a mild disc bulge at L5-S1 and minimal annular bulge at L4-5, hypertrophic changes at the facet joints, but no significant spinal stenosis. *Id.* at 22. Notably, six days after treatment began, Claimant reported he suffered no pain at all and findings upon examination were normal. *Id.* Claimant was advised to continue medication and return to normal activity. *Id.*

Additionally, on October 20, 2003, upon Claimant's doctor visit for unrelated foot pain, he reported no complaints of back pain, stiffness, muscle cramps, or myalgia. *Id.* (citing Exhibit 5F.) Claimant did not report any impairment-related complaints in January 2004. *Id.* The first impairment related complaints were in May 2004 where Claimant reported numbness but not weakness in his legs. *Id.* The examination in May 2004 revealed full range of motion, normal muscle strength, and normal neurological assessment. *Id.* In October 2004, Claimant had failed to show for treatments and the examination was unremarkable. *Id.* In December 2004, Claimant had no complaints of leg weakness, but he complained of shoulder pain while doing yard work. *Id.* Examination revealed full range of motion in legs, arms, and shoulders, and Claimant was advised to use moist heat, muscle relaxants, and ibuprofen. *Id.*

In February 2005, Claimant exhibited symmetric shoulder shrugs, and 5/5 motor strength with excellent power and no signs of fatigability, normal muscle bulk with no fasciculations in the arms, normal neck strength, and

5/5 motor strength in the legs.[1]  *Id.*  Further studies revealed only mild disc degeneration with no evidence of disc herniation.  *Id.* at 23.  A year later in December 2006, Dr. Bruce Romeo evaluated Claimant who demonstrated no cervical or lumbar spasms, no joint deformity or tenderness, had normal gait, and no limitations in stooping, kneeling, crouching, or walking.[2]  In January 2007, Claimant sought treatment from Lowell Brag, D.C., complaining of constant 10/10 pain in his mid-back, lower-back, and muscle spasms.  *Id.* at 24.  Following treatment, Claimant reported in February 2007, only occasional 1/10 mid-back, lower-back, and muscle spasms.  *Id.*  Further, he demonstrated no difficulty with carriage, gait, or movement.  *Id.*  In February 2007, Claimant sought another physician and reported his lower back pain associated with the accident, his previous history of weakness in his arms, and that he was trying to get on disability.  *Id.*  The

---

[1]Testing was done by Dr. C. William Barr, III, when Claimant saw him for further evaluation of his shoulders after Claimant  watched a program on multiple sclerosis and became concerned.  (Tr. at 22.)(citing Exhibit 4F). The test revealed no signs of multiple sclerosis. (Tr. at 23.)

[2]The December 2006 evaluation was done a week after an automobile accident where Claimant's vehicle was rear-ended by another at approximately 5mph, but Claimant did not mention the incident nor any complaints associated with it to the practicing physician. (Tr. at 23.)

evaluation revealed only some neck stiffness, questionable right arm weakness, and that the Claimant was not in acute distress. *Id*. The doctor prescribed Medrol Dose-pak and Tylenol #3. *Id*.

In light of the above medical record, the ALJ had substantial evidence where the Claimant's allegations of disabling pain and functional restrictions are disproportionate with the objective medical evidence which consistently shows improvement with treatment and limited functional restrictions.[3] *Id*. Accordingly, the ALJ correctly found Claimant to have no impairment or

---

[3]Although not directly raised at issue by Plaintiff, this Court notes the ALJ's determination to afford Dr. Maria Wellman's opinions with no weight. *Id*. at 25. The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The ALJ had "good cause" to not afford Dr. Wellman's opinion any weight where according to the record the doctor had not seen the claimant since 2002 and where Dr. Wellman's medical opinion was inconsistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Dr. Wellman's findings are inconsistent with the record which shows that the claimant reported his daily activities such as grocery shopping, dating, mowing his grass, and changing the oil of his car had not been inhibited. *Id*. at 24. Additionally, Dr. Wellman's opinion that the claimant in his alleged disabled state requires a job that would be less strenuous than medium RFC is inconsistent when compared to the heavy level capacity that the claimant worked in as a diesel mechanic with the same level of severity and alleged impairment and without accommodation. *Id*. at 25. Instead, the ALJ gave great weight to Dr. Bruce Romeo's opinions where in December 2006, the record indicates Claimant would be expected to have no limitations to sitting, standing, or walking, and he would have no limitation to lift/carry ten pounds constantly, thirty pounds frequently, and fifty pounds occasionally. (Tr. at 25A).

combination of impairments that meets or medically equals the level required.[4] (Tr. at 20.)

In addition to the objective medical evidence, the ALJ weighed: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain and symptoms; factors that aggravate the symptoms; type, dosage, and results of claimant's medicine to alleviate his symptoms; other treatment of symptoms; other measures claimant uses; and other factors limiting or restricting the claimant. *Id.* at 20-21. (citing S.S.R. 96-7p).

The ALJ weighed the above listed factors when assessing Claimant's credibility. (Tr. at 20.) Substantial evidence regarding these factors exists in the record to affirm the ALJ's ruling of medium RFC and discrediting Claimant's statements of severity of pain. First, Claimant does not appear duly inhibited by his impairments in his daily activities where the claimant has reported "that he still shops for groceries, cuts his own grass, uses a leaf blower, washes his car, cooks, changes the oil in his car, vacuums, does

---

[4]The ALJ found that Claimant's medically determinable impairments may reasonably produce symptoms, but the ALJ determined Claimant's statements regarding the severity of such symptoms not entirely credible. (Tr. 21.)

laundry, drives, and dates regularly. . ..." *Id.* at 24. Additionally, the frequency and intensity of Claimant's symptoms as the ALJ determined from the record do not appear prolonged when as late as February 9, 2007, Claimant reported only "occasional 1/10 mid-back pain, occasional 1/10 lower-back pain, and occasional 1/10 lumbar muscle spasms." *Id.* at 24. Next, the ALJ noted that Claimant's treatment "has been essentially routine and/or conservative in nature." *Id.* at 25. Further, the ALJ considered Claimant's lack of active treatment or medication for significant periods of time. *Id.* at 24-25. The ALJ correctly weighed in relation to the medical evidence of the record: the above factors in accordance with S.S.R. 96-7p; the severe impairments of cervical radiculopathy, degenerative disc disease of the lumbar spine, and obesity; and the claimant's medically determinable impairments of hypertension, hyperlipidemia, and obstructive sleep apnea. *Id*. at 19. Accordingly, substantial evidence exists to uphold the ALJ's RFC finding and the ALJ's finding that the claimant's allegations were incongruent to the objective medical record. *Id.* at 24.

    B.    Combined Effects of Impairments Consideration.

Claimant contends that the ALJ's RFC finding is in error by alleging the

ALJ considered only Claimant's severe impairments of cervical radiculopathy, degenerative disc disease of the lumbar spine, and obesity and failed to consider the combined effect of Claimant's medically determinable impairments where the ALJ only "acknowledged" hypertension, hyperlipidemia, and obstructive sleep apnea. (Doc. 7.) Claimant noted the ALJ determined the medically determinable impairments caused no more than minimal, if any, work limitations which the claimant concludes demonstrates the ALJ's failure to consider the combined effects of all impairments. *Id.* (citing Tr. at 19.)

The ALJ must consider the combined effect of all impairments in assessing the claimant's disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). A claimant should be considered in the whole and not evaluated in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala,* 985 F.2d 528, 532-33 (11th Cir. 1993). In *Reliford v. Barnhart,* 157 Fed Appx. 194 (11th Cir. 2005), the Court found the ALJ had considered the combined effects of the claimant's impairments. *Id.* The Court reasoned that the Eleventh Circuit has "repeatedly held that an ALJ's finding regarding a claimant's "impairment or combination of

impairments" established that the ALJ had indeed considered the impact of the claimant's combined impairments." *Id.* (*citing Wilson v. Barnhart,* 284 F.3d 1219, 1224-25 (11th Cir. 2002). Here, the ALJ sufficiently considered the combined effects of claimant's impairments in both step three and step four of the assessment process. (Tr. at 19-20.) The ALJ made findings of severe impairments including: cervical radiculopathy, degenerative disc disease of the lumbar spine, and obesity as causing more than minimal limitations in claimant's ability to work in accordance with 20 C.F.R. 404.1520(c). (Tr. at 19.)

Additionally, the ALJ addressed claimant's medically determinable impairments of hypertension, hyperlipidemia, and obstructive sleep apnea finding that those impairments caused no more than minimal, if any, work-related limitations and could well-controlled with treatment. *Id.* Further, the ALJ in step three articulated that the medically determinable impairments had "been considered as well. . .." *Id.* Again, in step four, the ALJ articulated that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . .." *Id.* Accordingly, the ALJ's findings and articulations of

the above impairments are sufficient to establish that the ALJ did consider the combined effects of all impairments. *See e.g., Wilson,* 284 F.3d at 1224-25. Therefore, the ALJ's RFC finding is not in err.

IV. Conclusion.

Upon review of the administrative record, and considering all of Mr. Thomas's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

<u>Done this 22nd</u> day of <u>July 2009</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671